**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL],**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**[UNDER SEAL]**<br><br>**Defendant.** | **Civil No. ________**<br><br>**Filed Under Seal Pursuant to 31 U.S.C. § 3730(b)(2)** |

**COMPLAINT AND JURY DEMAND**

# FILED UNDER SEAL

# NOT TO BE FILED ON PACER



FILED USDC FLND PN
FEB 20'20 pm12:14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>***ex rel.***<br><br>**VANTAGE SYSTEMS, INC.**<br><br>**Relator,**<br><br>**v.**<br><br>**HX5, LLC**<br><br>**HX5 SIERRA, LLC**<br><br>**MARGARITA HOWARD**<br><br>**Defendants.** | **Civil No.** 3:20CV 3649-MCR-HTC<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Filed Under Seal Pursuant to 31 U.S.C. § 3730(b)(2)** |

**COMPLAINT AND JURY DEMAND**

1. Relator Vantage Systems, Inc., through its undersigned attorneys and on behalf of the United States of America ("United States" or "Government"), brings this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), against Defendants HX5, LLC, HX5 Sierra, LLC, and Margarita Howard. Defendants knowingly



FILED USDC FLND PN
FEB 20 '20 AM10:02

submitted or caused to be submitted false and fraudulent claims for payment to the National Aeronautics and Space Administration (NASA), the U.S. Department of Defense, and other federal agencies, for contracts set aside for economically disadvantaged individuals under the Small Business Administration (SBA) 8(a) BD program. Defendants created false statements and records material to those claims in conjunction with set-aside 8(a) contracts between the Defendant companies and federal agencies, in violation of the False Claims Act.

2. Defendants Margarita Howard and HX5 willfully misrepresented and failed to disclose material information about Ms. Howard's and HX5's assets, net worth, income, and source of capital or loans in order to fraudulently obtain 8(a) set-aside contracts intended for genuinely disadvantaged small businesses. While HX5 was a participant in the 8(a) BD program, Ms. Howard accumulated considerable assets, including luxury homes, condos, office buildings, a fishing boat, and other valuable property. The total value of these assets greatly exceeded the economic disadvantage limits for owners of 8(a) BD participants.

3. Despite not meeting the economic disadvantage requirements of the 8(a) BD program, HX5 obtained several 8(a) set-aside contracts, both by itself and through its 8(a) joint venture, Defendant HX5 Sierra, in which HX5 was the majority partner. HX5 and HX5 Sierra fraudulently obtained 8(a) contracts with a total potential value in excess of $700 million.

4. In 2019, HX5 was awarded the Glenn Engineering and Research Support (GEARS) contract issued by NASA to perform engineering, research, and scientific support at NASA's Glenn Research Center in Cleveland, Ohio. The GEARS contract is an 8(a) set-aside contract with a potential value of approximately $348.8 million. Because HX5 and Ms. Howard were willfully misrepresenting Ms. Howard's economic disadvantage at the time that HX5 submitted its offer in April 2017, HX5 fraudulently obtained the GEARS contract, submitted false claims for payment under the contract, and created false statements and records material to those claims.

5. Defendants fraudulently obtained another large NASA contract by creating an 8(a) joint venture, HX5 Sierra, LLC. In 2015, HX5 Sierra was awarded an 8(a) set-aside contract, Test Facility

Operations, Maintenance and Engineering (TFOME) at the NASA Glenn Research Center. TFOME has a potential value of $363 million. Because HX5 falsely participated in the 8(a) BD program due to its owner's lack of economic disadvantage, HX5 Sierra was also ineligible for the program and fraudulently obtained the TFOME contract. HX5 Sierra submitted false claims for payment under the TFOME contract, and created false statements and records material to those claims.

6. HX5 fraudulently obtained several additional 8(a) set-aside contracts, including both prime contracts and subcontracts, that were awarded at a time when HX5 could not possibly have been eligible for the 8(a) BD program due to its owner's misrepresentation of her financial information.

7. HX5 also used its Small Disadvantaged Business (SDB) status to get numerous subcontracts from prime contractors who needed to satisfy SDB subcontracting goals for government contracts. HX5 automatically acquired SDB status through its fraudulent participation in the 8(a) BD program, and used that status to submit false claims under SDB subcontracts.

8. After HX5 graduated from the 8(a) program in 2017, HX5 falsely self-certified as an SDB by continuing to assert that Ms. Howard was economically disadvantaged even after her financial resources had vastly exceeded the SBA's limits for economic disadvantage. HX5 misrepresented its SDB eligibility to the SBA and the public until October 2019, when Vantage Systems notified SBA and NASA that HX5 was in violation of the economic disadvantage requirements. Immediately after Relator notified SBA and NASA of HX5's ineligibility, HX5 removed its SDB self-certification from its website and from SBA's online portal.

9. Defendants have undermined the fundamental goal of the 8(a) BD program of helping small disadvantaged businesses to compete in the American economy. Defendants' unlawful and fraudulent schemes and false claims damaged the United States by causing it to divert federal dollars that should have gone to genuinely economically disadvantaged small businesses. Defendants defrauded the 8(a) BD program in order to enrich Ms. Howard, whose wealth and income grossly exceeded the limits imposed by federal law on 8(a) BD participants.

## I. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) and because Defendants transacted business and committed acts proscribed by 31 U.S.C. § 3729 in this District. Venue is proper under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b).

11. As required by 31 U.S.C. § 3730(b)(2), a written disclosure of substantially all material evidence and information in Relator's possession was served on the Government prior to this filing, including by delivering material evidence and information to the SBA, NASA, and the United States Attorney for the Northern District of Florida.

12. This suit is not based upon prior public disclosures of allegations or transactions as defined under 31 U.S.C. § 3730(e)(4)(A). To the extent a public disclosure occurred, Vantage Systems is an original source under 31 U.S.C. § 3730(e)(4)(B). Vantage Systems possesses direct and independent knowledge of the Complaint's allegations and voluntarily and affirmatively disclosed them to the United States Government before filing this Complaint.

## II. THE PARTIES

13. Relator Vantage Systems, Inc. ("Relator" or "Vantage Systems") is a Maryland corporation headquartered at 10210 Greenbelt Road, Suite 400, Lanham, MD 20706. Vantage Systems is an engineering and IT firm that specializes in providing aerospace engineering services.

14. Defendant HX5, LLC ("HX5") is a Florida company located at 212 Eglin Pkwy SE, Fort Walton Beach, FL 32548-5897.

15. Defendant HX5 Sierra, LLC ("HX5 Sierra") is an 8(a) joint venture company between HX5 and Sierra Lobo, Inc. HX5 has the majority share of HX5 Sierra. HX5 Sierra is a Florida company that shares HX5's headquarters at 212 Eglin Pkwy SE, Fort Walton Beach, FL 32548-5897.

16. Defendant Margarita Howard is the owner, President, and Chief Executive Office of HX5. Ms. Howard is a resident of Florida.

## III. APPLICABLE LAW

### a. The SBA 8(a) Business Development Program

17. In 1978, Congress amended the Small Business Act to authorize the Minority Small Business and Capital Ownership

Development Program, later designated the 8(a) Business Development program. "The purpose of the 8(a) BD program is to assist eligible small disadvantaged business concerns compete in the American economy through business development." 13 C.F.R. § 124.1. The basic requirement of an 8(a) BD participant is to be "a small business which is unconditionally owned and controlled by one or more socially and economically disadvantaged individuals who are of good character and citizens of and residing in the United States, and which demonstrate potential for success." 13 C.F.R. § 124.101.

18. The federal government has a statutory goal of awarding 23% of all federal contract dollars to small businesses, including 5% to small disadvantaged businesses. In order to meet its statutory goals, the government restricts competition for some contracts to businesses that participate in the 8(a) BD program.

19. Participation in the 8(a) BD program lasts for a term of 9 years, unless the term is shortened by termination, early graduation (including voluntary early graduation), or voluntary withdrawal. 13 C.F.R. § 124.2. In order to participate in the 8(a) BD program, a company must be certified by the SBA. Eligibility for a specific 8(a) BD

contract is determined by criteria set forth in 13 C.F.R. § 124.507(b) and 13 C.F.R. § 124.101-112.

20. An 8(a) BD participant must meet continuing eligibility requirements and must notify SBA in writing of changed circumstances.

> "In order for a concern … to remain eligible for 8(a) BD program participation, it must continue to meet all eligibility criteria contained in § 124.101 through § 124.108. … The concern must inform SBA in writing of any changes in circumstances which would adversely affect its program eligibility, especially economic disadvantage and ownership and control."

13 C.F.R. § 124.112(a). [Emphasis added.]

> "Sufficient reasons for SBA to conclude that a socially disadvantaged individual is no longer economically disadvantaged include, but are not limited to, excessive withdrawals of funds or other assets withdrawn from the concern by its owners, or substantial personal assets, income or net worth of any disadvantaged owner. SBA may also consider access by the Participant firm to a significant new

> source of capital or loans since the financial condition of the Participant is considered in evaluating the disadvantaged individual's economic status."

13 C.F.R. § 124.112(c)(2). [Emphasis added.]

21. As part of an annual review by the SBA district office with jurisdiction over the 8(a) participant, the participant must submit the following:

> "(1) A certification that it meets the 8(a) BD program eligibility requirements as set forth in § 124.101 through § 124.108 and paragraph (a) of this section;
>
> (2) A certification that there have been no changed circumstances which could adversely affect the Participant's program eligibility. If the Participant is unable to provide such certification, the Participant must inform SBA of any changes and provide relevant supporting documentation.
>
> (3) Personal financial information for each disadvantaged owner;
>
> (4) A record from each individual claiming disadvantaged status regarding the transfer of assets for less than fair

market value to any immediate family member, or to a trust any beneficiary of which is an immediate family member, within two years of the date of the annual review. The record must provide the name of the recipient(s) and family relationship, and the difference between the fair market value of the asset transferred and the value received by the disadvantaged individual.

(5) A record of all payments, compensation, and distributions (including loans, advances, salaries and dividends) made by the Participant to each of its owners, officers or directors, or to any person or entity affiliated with such individuals;"

13 C.F.R. § 124.112(b). The forms that must be submitted include SBA Form 1450 (8(a) Annual Update) and 413 (Personal Financial Statement). Separate forms must be submitted for the participant's owner and owner's spouse. The forms conspicuously notify the participant of criminal and civil liability, including under the False Claims Act, for any false statement or misrepresentation in order to influence the 8(a) certification.

22. A person or entity that misrepresents 8(a) eligibility damages the United States based on the total value of the contract:

> "In every contract ... which is set aside, reserved, or otherwise classified as intended for award to 8(a) participants, there shall be a presumption of loss to the United States based on the total amount expended on the contract ... whenever it is established that a business concern other than an 8(a) participant willfully sought and received the award by misrepresentation."

13 C.F.R. § 124.521.

23. As a participant in the 8(a) BD program, HX5 and its owner were required to meet, on a continuing basis, criteria for social disadvantage and economic disadvantage set forth in 13 C.F.R. § 124.104 and 13 C.F.R. § 124.112. The relevant economic disadvantage requirements for 8(a) BD eligibility are set forth in the following paragraphs.

24. The net worth of an 8(a) BD participant owner must be less than $750,000:

"For initial 8(a) BD eligibility, the net worth of an individual claiming disadvantage must be less than $250,000. For continued 8(a) BD eligibility after admission to the program, net worth must be less than $750,000. In determining such net worth, SBA will exclude the ownership interest in the applicant or Participant and the equity in the primary personal residence (except any portion of such equity which is attributable to excessive withdrawals from the applicant or Participant). Exclusions for net worth purposes are not exclusions for asset valuation or access to capital and credit purposes.

(ii) [...]

(iii) Income received from an applicant or Participant that is an S corporation, limited liability company (LLC) or partnership will be excluded from an individual's net worth where the applicant or Participant provides documentary evidence demonstrating that the income was reinvested in the firm or used to pay taxes arising in the normal course of operations of the firm. Losses from the S corporation, LLC or

partnership, however, are losses to the company only, not losses to the individual, and cannot be used to reduce an individual's net worth.

(iv) [...]"

13 C.F.R. § 124.104(c)(2). [Emphasis added.] Defendant Margarita Howard, HX5's owner, engaged in various real estate and financial transactions that demonstrate that her net worth greatly exceeded the $750,000 net worth requirement of an 8(a) BD participant during HX5's participation in the program.

25. The assets of the owner of an 8(a) BD participant, including personal residence and value of the 8(a) BD participant entity, must not exceed $6 million:

"An individual will generally not be considered economically disadvantaged if the fair market value of all his or her assets (including his or her primary residence and the value of the applicant/Participant firm) exceeds $4 million for an applicant concern and $6 million for continued 8(a) BD eligibility. The only assets excluded from this determination

> are funds excluded under paragraph (c)(2)(ii) of this section as being invested in a qualified IRA account."

13 C.F.R. § 124.104(c)(4). [Emphasis added.] HX5, Ms. Howard, and corporate entities owned by Ms. Howard engaged in real estate and financial transactions that demonstrate that the value of Ms. Howard's assets greatly exceeded the $6 million asset value limit of an 8(a) BD participant during HX5's participation in the program.

26. The personal income of the owner of an 8(a) BD participant must not exceed $350,000 per year:

> "(i) If an individual's adjusted gross income averaged over the three years preceding submission of the 8(a) application exceeds $250,000, SBA will presume that such individual is not economically disadvantaged. For continued 8(a) BD eligibility, SBA will presume that an individual is not economically disadvantaged if his or her adjusted gross income averaged over the three preceding years exceeds $350,000. The presumption may be rebutted by a showing that this income level was unusual and not likely to occur in the future, that losses commensurate with and directly

> related to the earnings were suffered, or by evidence that the income is not indicative of lack of economic disadvantage.
>
> (ii) Income received from an applicant or Participant that is an S corporation, LLC or partnership will be excluded from an individual's income where the applicant or Participant provides documentary evidence demonstrating that the income was reinvested in the firm or used to pay taxes arising in the normal course of operations of the firm. Losses from the S corporation, LLC or partnership, however, are losses to the company only, not losses to the individual, and cannot be used to reduce an individual's personal income."

13 C.F.R. § 124.104(c)(3). [Emphasis added.] HX5 and Ms. Howard engaged in real estate and financial transactions that demonstrate that Ms. Howard's personal income exceeded the $350,000 limit of the owner of an 8(a) BD participant during HX5's participation in the program.

27. Withdrawals of funds from an 8(a) BD participant firm are limited to $400,000 per year:

> "Withdrawals are excessive if in the aggregate during any fiscal year of the Participant they exceed (i) $250,000 for

> firms with sales up to $1,000,000; (ii) $300,000 for firms with sales between $1,000,000 and $2,000,000; and (iii) $400,000 for firms with sales exceeding $2,000,000."

13 C.F.R. § 124.112(d)(3).

28. When determining economic disadvantage for 8(a) BD eligibility, financial information about the spouse of the owner must also be considered:

> "When married, an individual claiming economic disadvantage must submit separate financial information for his or her spouse. SBA will consider a spouse's financial situation in determining an individual's access to credit and capital where the spouse has a role in the business (e.g., an officer, employee or director) or has lent money to, provided credit support to, or guaranteed a loan of the business."

13 C.F.R. § 124.104(b)(2).

**b. Small Disadvantaged Business program**

29. An 8(a) BD participant automatically also qualifies as a small disadvantaged business (SDB) under federal contracting rules. When an 8(a) BD participant graduates from the program, the former

participant may self-certify as an SDB with the SBA, pursuant to regulations set forth at 13 C.F.R. § 124.1001-1016. An entity with self-certified SDB status will qualify for contracts and subcontracts that require continuing SDB eligibility.

30. Self-certification of SDB eligibility has the same economic disadvantage requirements as 8(a) participation. 13 C.F.R. § 124.1002(a). In particular, the SDB regulations restate the $750,000 net worth requirement for individuals claiming economic disadvantage. 13 C.F.R. § 124.1002(c).

31. Persons or entities who misrepresent SDB status are subject to the penalties imposed by section 16(d) of the Small Business Act, 15 U.S.C. § 645(d), as well as any other penalty authorized by law. 13 C.F.R. § 124.1004(a). Penalties for misrepresentation include suspension or debarment, as well as "severe penalties under the False Claims Act," and "severe criminal penalties" in the case of knowing misrepresentation. 13 CFR § 124.1015(e).

32. HX5, which graduated from the 8(a) BD program in April 2017, self-certified as a small disadvantaged business until at least October 2019, when Vantage Systems informed SBA and NASA that

HX5 was in fact ineligible for SDB status, at which point HX5 removed its SDB self-certification from the SBA's website and HX5's own website.

### c. The False Claims Act

33. The False Claims Act provides that any person who knowingly presents or causes another to present a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty for each false claim or statement and three times the amount of the damages sustained by the Government. The Act also creates liability for any person who knowingly makes or uses false records or statements that are material to a claim for payment, or who conspires to commit these acts or other acts for which there is False Claims Act liability. 31 U.S.C. § 3729(a)(1)(A)-(C).

34. The False Claims Act's whistleblower provisions allow a person who has information regarding a false or fraudulent claim against the Government to bring an action for himself and on behalf of the United States, and to share in any recovery.

## IV. FACTUAL ALLEGATIONS

35. HX5 participated in the 8(a) BD program from April 12, 2008 through April 12, 2017, and was certified as an SDB throughout its term in the 8(a) BD program. After its April 12, 2017 graduation from the SBA 8(a) program, HX5 represented itself as a self-certified Small Disadvantaged Business (SDB) both on its SBA online profile and on its own website until October 2019.

36. For much of the time that HX5 participated in the 8(a) BD program and certified itself as a small disadvantaged business, HX5 and its ownership were ineligible for 8(a) participation. Transactions by HX5, HX5's owner Margarita Howard, and multiple entities owned and managed by Ms. Howard demonstrate that her net worth, assets, and income must have exceeded the requirements of the 8(a) BD program by 2016 or earlier.

### a. Margarita Howard's assets and transactions

#### 1. 4300 Breakwater Drive mansion

37. Margarita Howard's residence since at least October 2016 is a luxury mansion located at 4300 Breakwater Drive, Destin, FL 32541. Real estate listings show that the Breakwater Drive estate is a 14,000

square foot waterfront mansion with eight (8) bedrooms and nine (9) bathrooms. The property was featured on the television show Extreme Homes on HGTV.

38. The 4300 Breakwater Drive Property was originally purchased by Ocean 5 Development LLC, an entity owned and controlled by Ms. Howard, on February 23, 2016. The 4300 Breakwater Drive property was purchased for $3,855,000, with a down payment of $1,156,500, representing 30% of the purchase price, and a $2,698,500 loan with an option to advance additional funds up to $5,397,000. The lending institution was a division of Synovus Bank, which is HX5's bank.

39. Property taxes on the 4300 Breakwater Drive property were $47,429.91, $42,842.39, $43,101.50, and $47,987.67 for the years 2015, 2016, 2017, and 2018 respectively.

40. Ms. Howard and her spouse listed the 4300 Breakwater Drive property as their residence on public filings as early as October 28, 2016. However, the property was owned by Ocean 5 Development LLC until February 13, 2017, when the LLC conveyed the Breakwater Drive mansion to Margarita Howard for ten dollars in a non-arms-

length transaction. The transfer occurred two weeks after Ocean 5 Development LLC satisfied the balance due on the $2,698,500 mortgage, which was only one year after it had purchased 4300 Breakwater Drive.

41. On March 3, 2017, Ms. Howard executed a warranty deed conveying the Breakwater Drive mansion property to her own Revocable Living Trust, while retaining a life estate for herself. This deed was recorded on March 10, 2017. An employee of HX5 was listed as a successor trustee on the deed conveying the property to Ms. Howard's living trust.

**2. 1719 Turkey Oak Drive**

42. Ms. Howard and her spouse, Michael F. Howard, identified 1719 Turkey Oak Drive, Navarre, FL 32566 as their primary residence for several years. Based on public records, that property has been valued between $600,000 and $750,000 in recent years. It is a six-bedroom, 4,500 square foot, waterfront property. The Howards purchased this property in April 2000 for $124,900. In 2008, Bank of Pensacola recorded a conditional assignment of rents, leases, and revenues from the property subject to a debt owed by the Howards.

43. The Howards sold 1719 Turkey Oak Drive on February 9, 2017 for $735,000, shortly after Ocean 5 Development LLC satisfied the mortgage on the 4300 Breakwater Drive mansion.

**3. El Pescador condos**

44. Ms. Howard owned four condo units located at 1147 N. Bayshore Drive, Valparaiso, FL 32580, designated as Lots A through D of El Pescador Townhomes. On September 5, 2007 a satisfaction of mortgage was recorded in the land records for the Howards' payoff of a $560,000 mortgage loan to People's First Community Bank for the condo units. The mortgage was only one year old.

45. On November 20, 2012, Margarita and Michael Howard transferred the condo units to an entity called El Pescador Units 1234, LLC for $100. Less than a year later, on November 1, 2013, El Pescador Units 1234, LLC sold the property back to the Howards for $100.

46. Ms. Howard is identified as the Manager of El Pescador Units 1234, LLC in a publicly recorded warranty deed memorializing the transfer of the units on November 1, 2013 "without an exchange of value" from El Pescador Units 1234, LLC to Margarita Howard and Michael Howard.

47. In July 2017, the Howards sold the El Pescador condos for $495,000.

4. ***Oceans 5* recreational boat**

48. Ms. Howard owns a fishing boat named the *Oceans 5* (a name similar to an LLC owned and controlled by Ms. Howard), a 2013 model manufactured by Everglades Boats. Ms. Howard has owned the boat since at least 2015. A sale listing of what Vantage Systems believes to be the *Oceans 5* shows an asking price of $229,980.

**b. Transactions by other LLCs owned by Ms. Howard**

49. Throughout HX5's participation in the 8(a) BD program, Ms. Howard has been involved as an owner, officer, and manager of numerous LLCs in addition to HX5. While in these positions, she and her LLCs engaged in numerous transactions involving real estate and other assets that demonstrate HX5's ineligibility for the 8(a) BD program, starting in 2016 if not earlier.

50. Ms. Howard owns and/or controls several entities besides HX5, including Ocean 5 Development LLC, El Pescador Units 1234, LLC, Chaser 5 Holdings LLC, Sunset Harbor 211 Properties LLC, Emerald Spear LLC, and Lady Margarita LLC.

### 1. Ocean 5 Development LLC

51. Ocean 5 Development LLC is a Florida company formed on May 22, 2014. Margarita Howard is a managing member of this LLC, which shares a principal address with HX5 (212 Eglin Pkwy SE).

52. On February 23, 2016, the 4300 Breakwater Drive mansion was transferred by corporate warranty deed on February 23, 2016 from Breakwater Drive, LLC, a Texas company, to Ocean 5 Development LLC. The Breakwater Drive property was purchased for $3,855,000, with a down payment of $1,156,500, representing 30% of the purchase price, and a $2,698,500 loan.

53. On February 24, 2016, Synovus Bank executed a mortgage and security agreement with Ocean 5 Development LLC for a loan of $2,698,500 with the Breakwater Drive property as collateral, with the option to advance additional funds up to $5,397,000. Notably, Ocean 5's address listed on the agreement was 1719 Turkey Oak Drive, Navarre, FL 32566, the Howards' previous primary residence. Synovus Bank is the same bank used by HX5, LLC. A page on Synovus website highlights HX5 and Ms. Howard's relationship with Synovus Bank.

54. On January 24, 2017, Synovus Bank executed a complete satisfaction of the mortgage and security agreement by which Ocean 5 Development had borrowed at least $2,698,500 less than a year earlier. That same day, Synovus Bank also released the assignment of all rents and leases by Ocean 5 Development LLC to the bank.

55. As previously stated, on February 13, 2017, Ocean 5 Development LLC conveyed the Breakwater Drive mansion to Margarita Howard for ten dollars in a non-arms-length transaction. The warranty deed was recorded on February 17, 2017.

56. Ocean 5 Development LLC has also engaged in other real estate transactions, including acquiring property in Santa Rosa County, Florida (6900 block of Navarre Parkway, Navarre, FL 32566) for $792,000 in June 2014 and incurring a mortgage loan of $514,800 from Synovus Bank, with the option to advance additional funds up to $1,029,600.00. Ocean 5 Development LLC sold the property in December 2018 for $920,000.

57. Ocean 5 Development LLC currently owns 4 parcels of property in Destin, FL currently valued in excess of $2 million. These

parcels were acquired while HX5 was representing itself as a small disadvantaged business.

**2. El Pescador Units 1234, LLC**

58. El Pescador Units 1234, LLC is a Florida company formed on August 2, 2012. Margarita Howard was a manager of this LLC. As discussed above, on November 20, 2012, Margarita and Michael Howard transferred to El Pescador Units 1234, LLC four condo units located at 1147 N. Bayshore Drive, Valparaiso, FL 32580, known as Lots A through D of El Pescador Townhomes, for $100. On November 1, 2013, the entity sold the units back to the Howards for $100. These units were subsequently sold by the Howards on July 14, 2017 for $495,000. El Pescador Units 1234, LLC has been inactive since September 2018.

**3. Chaser 5 Holdings LLC**

59. Chaser 5 Holdings LLC is a Florida company formed on May 6, 2015. Margarita Howard is a managing member of this LLC.

60. In 2015, Chaser 5 Holdings LLC purchased an office building unit in Fort Walton Beach, Florida for $350,000. The address of the building is 220 Elgin Parkway SE, Fort Walton Beach, FL 32548,

approximately 30 feet from the HX5 headquarters at 212 Elgin Parkway SE.

**4. Sunset Harbor 211 Properties, LLC**

61. Sunset Harbor 211 Properties, LLC is a Florida company formed on August 2, 2012. Margarita Howard is a managing member of this LLC. In 2012, this entity acquired a condominium unit, 7468 Sunset Harbor Drive, Unit 211, Navarre, FL 32566 from Margarita and Michael Howard. The LLC sold the unit on March 22, 2019 for $220,000. The entity has been inactive since September 2019.

**c. HX5's transactions and assets**

62. The fair market value of HX5 itself, which must be added to Ms. Howard's total assets when determining her economic disadvantage eligibility pursuant to 13 C.F.R. § 124.104(c)(4), grew substantially while HX5 was an 8(a) BD participant.

**1. HX5's Fort Walton Beach units**

63. HX5, LLC purchased three parcels in Fort Walton Beach, FL in 2009-2011. The combined purchase price of these parcels was $1,064,500.

64. Two of the parcels (a building and adjoining parking lot) are the headquarters of HX5 at 212 Elgin Parkway SE, Fort Walton Beach, FL 32548. The third is a standalone building at 10 Industrial Street, Fort Walton Beach, FL 32548.

65. HX5 continues to own all three parcels.

**2. HX5 is a substantial asset for Margarita Howard**

66. HX5 and its joint venture HX5 Sierra have obtained numerous government contracts, including several 8(a) set-aside contracts, during its participation in the 8(a) BD program. The potential value of the contracts that HX5 obtained during its time as an 8(a) BD participant exceed $700 million.

67. The number of HX5's employees shows how much the company has grown while it participated in the 8(a) BD program. HX5 had 36 active participants in its 401(k) on December 31, 2008, the year when HX5 entered the 8(a) BD program. This number grew rapidly throughout HX5's participation in the program; there were 433 active participants in the plan on December 31, 2016, four months before HX5 submitted its bid for the GEARS contract and then graduated from the 8(a) BD program. On December 31, 2018, while HX5 was still self-

certifying as a small disadvantage business, HX5 had 605 active participants in its 401(k).

68. HX5 Sierra also grew since its formation; its 401(k) had 244 active participants on December 31, 2015, 266 active participants on December 31, 2016, and 303 active participants on December 31, 2018.

69. The value of HX5 at the time that it bid on 8(a) contracts, including the value of HX5's majority stake in HX5 Sierra, must be included in the calculation of Ms. Howard's assets and net worth for the purpose of determining her compliance with the economic disadvantage requirements.

**d. By 2016, the total value of Ms. Howard's assets clearly exceeded the $6 million asset limit for 8(a) BD participant owners.**

70. Based on the transactions discussed above, Ms. Howard's assets must have exceeded the 8(a) BD economic disadvantage asset limit of $6 million by 2016. These assets include:

- 4300 Breakwater Drive – Purchased for $3.8 million in 2016.

- 1719 Turkey Oak Drive – Sold for $735,000 in February 2017.
- Ocean 5 Development waterfront lots – Purchased for $792,000 in 2014.
- El Pescador Units – Mortgage of $560,000 satisfied in 2007, sold for $495,000 in July 2017.
- *Oceans 5* boat – Listing price of $229,000.
- Chaser 5 Holdings office building – Purchased for $350,000 in 2015.
- Sunset Harbor 211 Properties condo – Purchase price unknown, sold in 2019 for $220,000.
- HX5's Fort Walton Beach property – Purchased in 2009-2011 for $1,064,500.

These assets alone exceed $7 million. When combined with the fair market value of HX5 itself, including HX5's majority stake in HX5 Sierra, these transactions clearly demonstrate that Defendants willfully violated the economic disadvantage requirements for participation in the 8(a) BD program.

**e. 8(a) and SDB contracts awarded to HX5 and HX5 Sierra**

**1. The GEARS contract**

71. The Glenn Engineering and Research Support (GEARS) contract is the primary contract providing engineering, research, and scientific services to the NASA Glenn Research Center (NASA GRC). Services include research engineering support, fundamental research on space or gravity dependent combustion and fluid systems, facilities engineering support, testing engineering support, manufacturing engineering support, project management support, and data management.

72. GEARS is a cost-plus-fixed-fee indefinite-delivery, indefinite-quantity contract with a seven (7) year performance period and a potential value of approximately $348.8 million.

73. GEARS is an 8(a) set-aside contract, meaning that all offerors were required to be either 8(a) participating companies or SBA-approved 8(a) joint ventures. The final Request for Proposals (RFP) was issued on January 31, 2017. Six purportedly 8(a) eligible bidders submitted proposals for GEARS, including HX5. The proposal due date was April 5, 2017. HX5 graduated from the 8(a) BD program on April

12, 2017 because it had completed its maximum nine-year eligibility in the program.

74. HX5 was awarded the GEARS contract on January 8, 2018. Multiple bidders protested the award to the Government Accountability Office (GAO), which partially sustained the protests on May 1, 2018. NASA complied with GAO's recommendations, re-evaluated the proposals, and issued a Source Selection Statement awarding the contract to HX5 on September 11, 2019.

75. HX5 has submitted at least one claim under its GEARS award, for a fixed-price contract for the phase-in of the GEARS contract.

76. The potential value of GEARS, which is $348.8 million per the government's final probable cost determination in its award to HX5, was the highest cost in comparison to the two other bidding companies in the competitive range. Not only did HX5's bid result in a more expensive contract for NASA, it also undermined the federal government's statutory goal of allocating federal dollars to legitimately disadvantaged small businesses.

### 2. The TFOME contract

77. The Test Facility Operations, Maintenance, Engineering Services Contract (TFOME) is a contract to provide operations, engineering, and maintenance support services for test facilities and laboratories for the NASA Glenn Research Center in Cleveland, Ohio, and Plum Brook Station in Sandusky, Ohio.

78. In March 2015, NASA awarded the TFOME contract to HX5 Sierra, the joint venture created by HX5 and Sierra Lobo, Inc. TFOME was awarded as a cost-plus-fixed-fee 8(a) contract with a 17-month base period and four two-year option periods and one seven-month option period. The first and second two-year options were exercised by NASA. The potential value of the TFOME contract is $363 million.

### 3. Other 8(a) set asides awarded to HX5

79. HX5 has fraudulently obtained multiple other 8(a) contracts and submitted false claims for payment under those contracts while it was ineligible for 8(a) BD participation. Relator Vantage Systems found at least forty-five (45) competitive or sole-source 8(a) contracts awarded to HX5 on GovTribe. At least thirty (30) were awarded from 2012 to the present.

80. The following table contains the contract number, award date, current value, awarding agency, and place of performance of the thirty 8(a) set-aside contracts awarded to HX5 since 2012 that are displayed on GovTribe:

| Contract Number | Award Da | Current Val | Awarding Agency | Place of Performanc |
|---|---|---|---|---|
| W912HZ14D0008-0007 | 5/11/2017 | $95,718.98 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0007-0005 | 4/27/2017 | $105,265.17 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0007-0003 | 9/1/2016 | $208,974.00 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0007-0004 | 8/15/2016 | $114,401.60 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W9132T14D0002-0006 | 4/20/2016 | $22,597.92 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| W912HZ14D0003-0003 | 4/15/2016 | $841,734.24 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0008-0006 | 9/21/2015 | $183,211.45 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0008-0005 | 9/2/2015 | $43,683.12 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0007-0002 | 9/1/2015 | $207,448.40 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W9132T14D0002-0005 | 5/18/2015 | $96,960.00 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| W912HZ14D0008-0004 | 5/15/2015 | $38,111.84 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W9132T14D0002-0004 | 4/30/2015 | $129,505.72 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| GS00Q14OADS712-FA86 | 4/21/2015 | $207,509.01 | AFLCMC Wright Patterson AFB (DOD - USAF - AFMC - AFLCMC) | Hill AFB, UT |
| W912HZ14D0003-0002 | 4/15/2015 | $540,029.95 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ15C0006 | 3/30/2015 | $3,521,456.58 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0008-0003 | 12/29/2014 | $162,480.72 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0008-0002 | 10/1/2014 | $75,991.99 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W9132T14D0002-0003 | 9/19/2014 | $43,748.83 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| W912HZ14D0008-0001 | 9/2/2014 | $172,639.90 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0007-0001 | 8/8/2014 | $211,131.20 | Engineer Research and Development Center (DOD - Army - USACE) | Vicksburg, MS |
| W9132T14D0002-0002 | 7/30/2014 | $21,608.86 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| W9132T14D0002-0001 | 6/26/2014 | $0.00 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| W912DY14C0011 | 5/11/2014 | $1,625,024.43 | Engineering Support Center Huntsville (DOD - Army - USACE) | Vicksburg, MS |
| W912HZ14D0003-0001 | 5/6/2014 | $713,057.45 | Engineer Research and Development Center (DOD - Army - USACE) | Fort Walton Beach, FL |
| FA867813C0274 | 12/20/2012 | $4,502,833.00 | AFLCMC Eglin AFB (DOD - USAF - AFMC - AFLCMC) | Fort Walton Beach, FL |
| FA873013C0006 | 11/30/2012 | $0.00 | AFLCMC Hanscom AFB (DOD - USAF - AFMC - AFLCMC) | Fort Walton Beach, FL |
| FA300208D0030-0005 | 10/1/2012 | $203,631.00 | Air Education and Training Command (DOD - USAF) | Universal City, TX |
| N6883612C0051 | 9/27/2012 | $2,627,469.96 | Naval Supply Systems Command (DOD - Navy) | Pensacola, FL |
| FA865109D0067-0009 | 7/25/2012 | $679,966.00 | Air Force Research Laboratory (DOD - USAF - AFMC) | Fort Walton Beach, FL |
| FA865109D0067-0008 | 5/25/2012 | $198,862.00 | Air Force Research Laboratory (DOD - USAF - AFMC) | Fort Walton Beach, FL |

### 4. SDB subcontracts

81. As an 8(a) BD participant, HX5 automatically qualified for subcontracts designated for small disadvantaged businesses. HX5 also self-certified as an SDB after it graduated from the 8(a) BD program, despite its ineligibility due to failure to meet the economic disadvantage

requirements. HX5 used its false SDB status to get numerous subcontracts from prime contractors who needed to satisfy SDB subcontracting goals for government contracts. HX5 fraudulently induced these subcontracts, and submitted false claims for payment under these subcontracts, due to HX5's misrepresentation of its owner's economic disadvantage.

82. Relator Vantage Systems has identified several SDB subcontracts that HX5 obtained while it was ineligible for SDB set-asides. These include several subcontracts for U.S. Special Operations Command prime contracts held by Jacobs Engineering Group Inc. The potential value of these subcontracts exceeds $78 million.

## V. CLAIMS FOR RELIEF

### COUNT I
### False Claims Act – Presentment of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

83. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

84. Through the acts described above and otherwise, Defendants and their agents and employees knowingly presented or caused to be

presented to the United States false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

85. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

**COUNT II**
**False Claims Act – Making or Using False Records or Statements Material to a False Claims**
**31 U.S.C. § 3729(a)(1)(B)**

86. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

87. Through the acts described above and otherwise, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

88. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

**COUNT III**
**False Claims Act – Conspiracy**
**31 U.S.C. § 3729(a)(1)(C)**

89. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

90. Through the acts described above and otherwise, Defendants entered into a conspiracy or conspiracies to defraud the United States by getting false or fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(1)(C).

91. Defendants and their agents and employees have taken substantial steps in furtherance of these conspiracies, *inter alia*, by preparing false records, by submitting claims for reimbursement to the Government for payment or approval, and by directing their agents and personnel not to disclose and/or conceal their fraudulent practices.

92. The United States, unaware of Defendants' conspiracy or the falsity of the records, statements, and claims made by Defendants, their agents and employees, and as a result thereof, has paid money that it would not otherwise have paid. As a result of Defendants' conduct, the United States has been damaged in an amount to be determined at trial, and is also entitled to statutory penalties.

## VI. REQUEST FOR RELIEF

WHEREFORE, Relator Vantage Systems requests that judgment be entered against Defendants HX5, LLC, HX5 Sierra, LLC, and Margarita Howard ordering that:

1. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;
2. The Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States has sustained as a result of Defendants' actions, as well as a civil penalty against Defendants for each violation of 31 U.S.C. § 3729, plus any increase as specified by Congress;
3. Relator be awarded the maximum amount allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d);
4. Relator be awarded all costs and expenses of this action, including attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);
5. The United States and Relator recover all such other relief as the Court deems just and proper.

## VII. REQUEST FOR JURY TRIAL

Relator hereby demands a trial by jury.

Date: February 19, 2020

Respectfully submitted,

By: */s/ Adam D. Warden*
Maya Saxena
Joseph E. White, III
Adam D. Warden
7777 Glades Road
Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
awarden@saxenawhite.com

Mark Hanna (pro hac forthcoming)
Nicolas F. Mendoza (pro hac forthcoming)
Caleb Jackson (pro hac forthcoming)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
mhanna@murphypllc.com
nmendoza@murphypllc.com
cjackson@murphypllc.com

*Attorneys for Relator Vantage Systems*